[Cite as *Bode v. Concord Twp.*, 2019-Ohio-5062.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| DOUGLAS BODE, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2018-L-116** |
| CONCORD TOWNSHIP, et al., | : | |
| Defendants-Appellees. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 2017 CV 001089.

Judgment: Affirmed in part; reversed in part; and remanded.

*David Comstock* and *Christopher Mars*, Bonezzi Switzer Polito & Hupp Co., LPA, 3701B Boardman-Canfield Road, Suite 101 (For Plaintiff-Appellant).

*Michael Lucas* and *Stephanie Landgraf*, Wiles and Richards, 37265 Euclid Avenue, Willoughby, OH 44094 (For Defendants-Appellees).

MARY JANE TRAPP, J.,

{¶1} Appellant, Douglas Bode ("Mr. Bode"), appeals the judgment of the Lake County Court of Common Pleas finding in favor of appellees, Concord Township Board of Trustees (the "Board"), following a bench trial. We determine the Board committed a technical violation of Ohio's Open Meetings Act (the "OMA") so that an injunction ordering the Board to comply with the OMA is appropriate, but we do not invalidate Mr. Bode's suspension and demotion approved by the Board.

{¶2} Thus, we affirm in part, reverse in part, and remand to the trial court for further proceedings.

{¶3} While the Board, its counsel, and the trial court adhered to prior case law guidance from this court, particularly our opinion in *Holeski v. Lawrence*, 85 Ohio App.3d 824 (1993), after a critical review of that precedent, we find it cannot withstand the deeper scrutiny that has come with increased litigation regarding the OMA. We have a duty to review our precedent "and, when reconciliation is impossible, to discard [] former errors." (Citation omitted.) *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶43.

{¶4} Following the intent of Ohio "Sunshine Laws," we find as follows:

{¶5} (1) The OMA applies to any "meeting," which means (a) any prearranged discussion (b) of the public business of the public body (c) by a majority of its members.

{¶6} (2) "Discussion of the public business" means the exchange of words, comments or ideas by a public body.

{¶7} (3) "Public business" means matters within the purview of a public body's duties, functions and jurisdiction.

{¶8} (4) The following activities do not constitute a "meeting": (a) information-gathering, fact-finding, or the gathering of facts and information for ministerial purposes, unless there is also a discussion of public business between the members of the public body during the activity; or (b) a majority of a public body being in the same room and answering questions or making statements to other persons who are not public officials, even if those statements relate to the public business.

{¶9} (5) The OMA applies to any "executive session," which means (a) a portion of a "meeting" (b) held after a majority of a quorum of the public body determines, by a roll call vote, to hold an executive session, (c) held for the sole purpose of the

consideration of any of the matters set forth in R.C. 121.22(G)(1) through (8), and (d) at which the public may be excluded.

{¶10} (6) The OMA applies to a "meeting" or an "executive session" regardless of whether the public body deliberates.

{¶11} (7) A resolution, rule, or formal action adopted in an open meeting that results from deliberations in a meeting not open to the public is invalid unless the deliberations were (a) for a purpose specifically authorized in division (G) or (J) of R.C. 122.21 and (b) conducted at an executive session held in compliance with R.C. 121.22.

{¶12} (8) And finally, a public body "deliberates" by thoroughly discussing all of the factors involved in a decision, carefully weighing the positive factors against the negative factors, cautiously considering the ramifications of its proposed action, and gradually arriving at a proper decision which reflects the legislative process.

**Substantive and Procedural Facts**

{¶13} Mr. Bode was a part-time lieutenant with the Concord Township Fire Department (the "Department") who the Board suspended and demoted following a series of incidents alleging unacceptable conduct.

{¶14} Mr. Bode previously filed a notice of appeal of an administrative decision in a separate complaint in the Lake County Court of Common Pleas, citing a litany of failures by the Department and the Board to comply with mandated procedures for imposing removal. The Board filed a motion to dismiss the appeal as time-barred under R.C. 505.38(A), and the appeal was dismissed by the trial court for want of jurisdiction. That decision was upheld by this court in *Bode v. Concord Twp. Bd. of Trustees*, 11th Dist. Lake No. 2018-L-043, 2019-Ohio-2666.

3

{¶15} Mr. Bode brought the underlying action as a procedural challenge under R.C. 121.22, the OMA. He sought, inter alia, to invalidate the suspension and demotion approved by the Board and an injunction ordering the Board to comply with the OMA. A substantive challenge regarding the alleged incidents of unacceptable conduct supporting Mr. Bode's suspension and demotion are not subject to the current appeal.

{¶16} That being said, the Board originally discussed the potential suspension and demotion of Mr. Bode at a March 27, 2017 special meeting during an executive session to which Fire Chief Matthew Sabo ("Chief Sabo") was invited to attend. Following the special meeting and executive session, no action was authorized by vote or taken by the Board. That same day, however, Chief Sabo drafted a two-page letter to Mr. Bode—following the suggestion of the Board that he follow his best judgment in crafting an appropriate disciplinary action consistent with the employee handbook—informing him that he would be suspended and demoted, outlining the unacceptable conduct, citing the Standard Operating Guidelines that were violated, and stating that the suspension and demotion was "effective immediately." Mr. Bode signed the letter where prompted, acknowledging receipt.

{¶17} Thereafter, the Board moved for, voted on, and approved Mr. Bode's suspension and demotion at its regularly scheduled April 5, 2017 meeting. The suspension was made retroactive to March 27, 2017. The minutes of that meeting, which contained the vote in favor of Mr. Bode's suspension and demotion, were approved by the Board on April 19, 2017.

{¶18} Mr. Bode filed the complaint underlying the present appeal claiming that the special meeting and executive session conducted by the Board on March 27, 2017 failed

4

to conform with the statutory requirements of the OMA. His claim is that following and resulting from a non-conforming executive session of the Board, he was suspended for six months and demoted from a part-time lieutenant to a part-time firefighter/paramedic with the Department.

{¶19} Mr. Bode filed a motion for summary judgment, which the trial court overruled. Thereafter, the matter proceeded to trial, where the following relevant testimony was presented to the trial court:

{¶20} Two trustees for the Board testified, and both gave similar testimony regarding the March 27, 2017 special meeting and executive session. Trustee Galloway testified that there were no deliberations on either March 27, 2017 or April 5, 2017 regarding Mr. Bode's employment. He stated that Chief Sabo was invited into executive session to update the Board on an issue concerning Mr. Bode's performance during a fire response earlier in the month, as well as his previous history of performance concerns. Trustee Galloway stated that both Trustee Malchesky and the third trustee of the Board were already aware of Chief Sabo's concerns through previous discussions with other officials but no authorization to act was given to Chief Sabo before April 5. Trustee Galloway offered the following testimony regarding the motion and vote to enter execute session:

{¶21} "[ATTORNEY LUCAS]: Now, there was a motion on the special meeting minutes of March 27, 2017, which I believe is plaintiff's exhibit 1, to go into executive session.

{¶22} "[MR. GALLOWAY]: Correct.

5

{¶23} "[ATTORNEY LUCAS]: And the minutes themselves simply state that a motion was made to go into executive session, correct?

{¶24} "[MR. GALLOWAY]: That is correct.

{¶25} "[ATTORNEY LUCAS]: Okay, and you made that motion.

{¶26} "[MR. GALLOWAY]: I made that motion.

{¶27} "[ATTORNEY LUCAS]: Right. Then, did you actually enunciate the reasons for going into executive session?

{¶28} "[MR. GALLOWAY]: I did.

{¶29} "[ATTORNEY LUCAS]: And they're not part of the minutes, right?

{¶30} "[MR. GALLOWAY]: They are not.

{¶31} "[ATTORNEY LUCAS]: And they're also . . . they were subject to approval process at the April 5, 2017 . . . meeting of April 5, 2017.

{¶32} "[MR. GALLOWAY]: Yes, they were.

{¶33} "[ATTORNEY LUCAS]: And, regrettably, it was not verbatimly corrected.

{¶34} "[MR. GALLOWAY]: There were no additions made.

{¶35} "[ATTORNEY LUCAS]: Okay.

{¶36} "[JUDGE LUCCI]: And your stated reason was personnel matters?

{¶37} "[MR. GALLOWAY]: Your honor, the motion that I made was in two parts, for the purposes of potential employee discipline, as well as a potential new hire.

{¶38} "[JUDGE LUCCI]: All right; so, it wasn't just a blanket personnel; it was specific as to discipline and hiring two separate employees.

{¶39} "[MR. GALLOWAY]: That is correct, and I believe that the notice that was made was done as personnel matters, which is probably just an attempt by our

6

administrator at the time to sort of sew those together, if you will, in terms of the notification. But the actual motion that I made to go into executive session was explicit as to the two matters. Our legal counsel is extremely detailed in those matters and always insisted –

{¶40} "[JUDGE LUCCI]: It wouldn't be Mr. Lucas, would it?

{¶41} "[MR. GALLOWAY]: It is Mr. Lucas, yes.

{¶42} "[ATTORNEY COMSTOCK]: I'll stipulate to that, if you'd like.

{¶43} "[ATTORNEY LUCAS]: Please; you flatter me.

{¶44} "[MR. GALLOWAY]: I can tell the Court that in the thirteen years that I've been a trustee with Mr. Lucas as our legal counsel, that is one area that he is extremely explicit, that actual reason must be given, that it relates to O.R.C."

{¶45} Further, Galloway went on to state:

{¶46} "[ATTORNEY LUCAS]: Okay. During the course of that executive session, at any point in time, was there any deliberation made as to any of those issues [regarding Bode]?

{¶47} "[MR. GALLOWAY]: No.

{¶48} "[ATTORNEY LUCAS]: At any–Well, I guess, correspondingly, at any point in time, was there any decision made regarding what was factually presented in terms of Mr. Bode's employment issues as presented by Fire Chief Sabo?

{¶49} "[MR. GALLOWAY]: No; decisions cannot be made in executive session.

{¶50} * * *

{¶51} "[ATTORNEY LUCAS]: At any point in time [on March 27, 2017], was there any instruction given regarding a specific disciplinary measure to be imposed?

{¶52} "[MR. GALLOWAY]: There was not. There was no instruction from the Board as to, You shall do A, B or C, other than, at the time, Chairman Malchesky's insistence that it be properly documented, either memo, letter, some sort of documentation, so that there was a proper paper trail as to the decision.

{¶53} "[ATTORNEY LUCAS]: So, subsequent to the conclusion of that special meeting, the actual March 27, 2017, letter was authored by Chief Sabo?

{¶54} "[MR. GALLOWAY]: Yes. I was not aware at the time, that afternoon, that the letter was issued, but, subsequently, yes, I'm aware of the letter."

{¶55} Trustee Malchesky also testified that no consensus was reached regarding discipline of Mr. Bode at the special meeting or executive session on March 27. Further, he confirmed he was previously aware of Mr. Bode's alleged performance issues from discussions with the deputy fire chief and Chief Sabo prior to March 27. Malchesky stated the following regarding the executive session:

{¶56} "[ATTORNEY LUCAS]: So, would it be accurate to indicate that the substance and the information conveyed during the course of that executive session was a harvesting of information regarding Mr. Bode?

{¶57} "[MR. MALCHESKY]: Absolutely.

{¶58} "[ATTORNEY LUCAS]: Were there any deliberations made during the executive session regarding Mr. Bode?

{¶59} "[MR. MALCHESKY]: Absolutely none. There's no deliberations ever made in executive session."

{¶60} Malchesky also corroborated Trustee Galloway's testimony that the letter written by Chief Sabo and given to Mr. Bode on March 27, 2017 was written with no

8

direction from the Board. This testimony conflicted with the testimony of Chief Sabo, who stated repeatedly that he believed he had the approval of the Board to impose disciplinary action when drafting the March 27, 2017 letter suspending and demoting Mr. Bode.

{¶61} Mr. Bode testified that he was escorted from the premises after Chief Sabo gave him the March 27, 2017 letter and began his suspension immediately. Mr. Bode claimed he was told by Chief Sabo at the time he received the letter that contacting the trustees to challenge the accusations would not help because the decision had already been made. Mr. Bode also claimed that contacting the trustees directly would violate department policy. Because of this, Mr. Bode testified that he was unaware of the April 5, 2017 meeting approving the suspension and making it retroactive to the date of the letter, and he was unable to present his side of the issue. On cross-examination, Mr. Bode conceded that the only action he took in the weeks following his receipt of the letter was to retain counsel and file suit against the township and the Board.

{¶62} During closing argument, counsel for Mr. Bode stated emphatically that the lack of detail in the meeting minutes is a violation of the OMA, since Mr. Bode could not ascertain the specific topic of discussions had from the March 27, 2017 special meeting minutes. The Board concedes that the minutes state "personnel" rather than the specific exceptions for executive session described in 121.22(G)(1). However, the testimony given by two trustees was that the actual motion made by Trustee Galloway provided the specificity required by the language of 121.22(G)(1).

{¶63} On October 2, 2018, the trial court issued a judgment entry granting judgment in favor of the Board. The trial court stated the following relevant findings and conclusions:

[¶8] On April 5, 2017, the Concord Township Board of Trustees (the trustees) authorized the suspension of the plaintiff for a period of six months and a reduction in rank from part-time lieutenant to part-time firefighter/paramedic, effective March 27, 2017. At issue in this case is whether the April 5, 2017 suspension and demotion were the result of deliberations during an executive session held during the trustees' March 27, 2017 meeting, and, if so, whether that executive session failed to comply with R.C. 121.22(G) by failing to sufficiently specify the matters to be discussed.

[¶9] Concord Township Trustees Christopher A. Galloway and Paul R. Malchesky both testified that no deliberations occurred during the March 27, 2017 executive session. Both trustees testified that the only discussion relating to the plaintiff during the executive session was the presentation of information by Chief Matthew R. Sabo as to the plaintiff's conduct on March 14, 2017. They further testified that after coming out of executive session, there was some general discussion about discipline, but no decisions had been made, and they were not aware that Chief Sabo would be informing the plaintiff that he was being suspended or demoted.

[¶10] The court finds the testimony of Trustees Galloway and Malchesky to be credible. The court finds that the March 27, 2017 executive session consisted merely of information gathering regarding an incident that occurred on March 14, 2017. Information-gathering, investigation, or fact-finding are not "deliberations." *Radtke v. Chester Twp.*, 44 N.E.3d 295, 2015-Ohio-4016 (11th Dist. Geauga), ¶25. Therefore, the court finds that no deliberations occurred relative to the plaintiff during the March 27, 2017 executive session. Further, the court finds that the plaintiff's demotion and suspension was not the result of nonpublic deliberations during an executive session, so that the trustees' action on April 5, 2017 was in compliance with R.C. 121.22(H) and is not invalid. *Springfield Local School Dist. Bd. of Ed. V. OAPSE*, 106 Ohio App.3d 855, 863-864, 667 N.E.2d 458, 464 (9th Dist. Summit 1995).

{¶64} Mr. Bode now appeals, asserting two assignments of error for our review.

For clarity and convenience, we consider the assignments out of order.

### Deliberations During Executive Session

{¶65} Mr. Bode's second assignment of error states:

10

{¶66} "The trial court erred in granting judgment in favor of appellees on appellant's complaint by finding that appellant's suspension and demotion were not the result of nonpublic deliberations during an executive session."

{¶67} In order to address this assignment of error, it is necessary to clarify several interrelated concepts under the OMA.

### Holeski v. Lawrence

{¶68} In *Holeski*, *supra*, this court stated: "The nature and purpose of R.C. 121.22 support the interpretation that the statute is intended to apply to those situations where there has been actual formal action taken; to wit, formal *deliberations* concerning the public business." (Emphasis sic.) *Id*. at 829. Courts have also required "deliberations" during executive sessions to trigger application of the OMA. *See, e.g., Cincinnati Enquirer v. Cincinnati Bd. of Edn.*, 1st Dist. No. C-100404, 192 Ohio App.3d 566, 2011-Ohio-703, ¶15 ("In the absence of deliberations or discussions by board members at the session, the session was not a "meeting" as defined by the OMA, so it was not required to occur in public").

{¶69} The conclusion that a meeting or executive session requires "deliberations" for the OMA to apply is based on a flawed reading of the OMA.

### Definition of Meeting

{¶70} R.C. 121.22(C) states that "[a]ll meetings of any public body are declared to be public meetings open to the public at all times." R.C. 121.22(B)(2) defines a "meeting" as "any prearranged discussion of the public business of the public body by a majority of its members." According to the Supreme Court of Ohio, "the elements of the statutory definition of a meeting are (1) a prearranged discussion, (2) a discussion of the

11

public business of the public body, and (3) the presence at the discussion of a majority of the members of the public body." *State ex rel. Cincinnati Post v. Cincinnati*, 76 Ohio St.3d 540, 543 (1996).

{¶71}  We have defined the "discussion of the public business" as "the exchange of words, comments or ideas by the board." (Emphasis deleted.)  *Holeski* at 830, quoting *DeVere v. Miami Univ. Bd. of Trustees*, 12th Dist. Butler No. CA85-05-065, 1986 WL 6763, *4 (June 10, 1986).  The Supreme Court of Ohio has defined the phrase "public business" as the "business of the government," i.e., "matters within the purview of [a public body's] duties, functions and jurisdiction."  (Citations omitted.)  *White v. King,* 147 Ohio St.3d 74, 2016-Ohio-2770, ¶21.

{¶72}  These definitions relating to a "meeting" under the OMA do not require "deliberations."

### Definition of Executive Session

{¶73}  The OMA does not contain an express definition of "executive session." The Seventh District Court of Appeals has defined "executive session" as "one from which the public is excluded and at which only such selected persons as the board may invite are permitted to be present."  (Citation omitted.)  *Thomas v. Bd. of Trustees*, 5 Ohio App.2d 265, 268 (7th Dist.1966).  More recently, the Seventh District has defined "executive session" as "a closed-door conference convened by a public body, after a roll call vote, that is attended by only the members of the public body (and those they invite), that excludes the public." *Keystone Commt. v. Switzerland of Ohio School Dist. Bd. of Edn.*, 7th Dist. No. 15 MO 0011, 2016-Ohio-4663, ¶25.  The Twelfth District has described an "executive session" as "a similar gathering [to a 'meeting'] but from which the public is

12

excluded." *State ex rel. Hardin v. Clermont Cty. Bd. of Elections*, 12th Dist. No. CA2011-05-045, 2012-Ohio-2569, ¶55.

{¶74} The proper meaning of "executive session" may be inferred from the provisions of the OMA that reference this term. For instance, R.C. 121.22(G) states that "the members of a public body may hold an executive session [1] only after a majority of a quorum of the public body determines, by a roll call vote, to hold an executive session and [2] only at a regular or special meeting [3] for the sole purpose of the consideration of any of the following matters [set forth in subsections (1) through (8)]." In addition, R.C. 121.22(C) anticipates that the minutes of meetings will also reference "executive sessions authorized under division (G) or (J)" of the OMA. These provisions demonstrate an "executive session" is part of a "meeting" (rather than itself a "meeting") that can only take place to consider certain matters and only after certain requirements are met.

{¶75} R.C. 121.22(H) provides that a public body may deliberate in a meeting not open to the public and subsequently adopt a valid resolution, rule, or formal action in an open meeting as long as the deliberations were for a purpose specifically authorized in subsections (G) or (J) of the OMA and were "conducted at an executive session held in compliance with" the OMA. This provision recognizes that an "executive session" is part of a meeting, "deliberations" may occur during an "executive session," and an "executive session" is not open to the public. Notably, it contains no requirement that "deliberations" occur for an "executive session" to take place.

{¶76} In fact, the text of the OMA recognizes that "deliberations" may not always occur during executive sessions. R.C. 121.22(C) provides in part that "[t]he minutes [of a regular or special meeting of any public body] need only reflect the general subject

13

matter of *discussions* in executive sessions authorized under division (G) or (J) of this section." (Emphasis added.) Further, the OMA permits a public body to hold an executive session "for the sole purpose of the *consideration*" of specified matters, as well as for "conferences" with its attorney for specified reasons and for "preparing for, conducting, or reviewing" negotiations or bargaining sessions with employees. (Emphasis added.) *See* 121.22(G)(1), (2), (3), and (4).

{¶77} In light of the above provisions, a reasonable definition of "executive session" is (a) a portion of a "meeting" (b) held after a majority of a quorum of the public body determines, by a roll call vote, to hold an executive session, (c) held for the sole purpose of the consideration of any of the matters set forth in R.C. 121.22(G)(1) through (8), and (d) at which the public may be excluded. Like the definition of "meeting," an "executive session" does not require "deliberations."

### *Deliberations*

{¶78} The term "deliberations" is referenced in three sections of the OMA. It first appears in R.C. 121.22(A), which is the very first section of the OMA and which states: "This section shall be liberally construed to require public officials to take official action and to conduct all *deliberations* upon official business only in open meetings unless the subject matter is specifically excepted by law." (Emphasis added.)

{¶79} R.C. 121.22(A) appears to be a general statement of purpose and a directive to courts to apply liberal construction. *See State ex rel. More Bratenahl v. Village of Bratenahl,* __ Ohio St.3d __, 2019-Ohio-3233, ¶8 ("The Open Meetings Act begins with a pronouncement"). It does not purport to modify the definition of "meeting" set forth in R.C. 121.22(B)(2).

14

{¶80} The OMA's second usage of the term "deliberations" occurs in R.C. 121.22(H), which states that a resolution, rule, or formal action can be deemed invalid if it was (1) adopted in a meeting that was not open, or (2) adopted in an open meeting if it resulted from "deliberations" that occurred during an improper executive session. This court in *Holeski* appears to have relied in part on R.C. 121.22(H) to conclude that meetings require "deliberations." *See id*. at 829.

{¶81} The OMA imposes numerous obligations on a public body that are separate and apart from adopting a resolution, rule, or formal action, such as (1) holding meetings open to the public (R.C. 121.22(C)), (2) members being present in person (*Id.*), (3) promptly preparing, filing, and maintaining minutes of a regular or special meeting (*Id.*), (4) making minutes open to public inspection (*Id.*), establishing a reasonable method of notification regarding meetings (R.C. 121.22(F)), (5) complying with specific notice requirements (*Id.*), and (6) complying with specific requirements to hold an executive session (R.C. 121.22(G)).

{¶82} Further, the OMA's remedies are not limited to the invalidation of a resolution, rule, or formal action. R.C. 121.22(I)(1) states in part "[a]ny person may bring an action to *enforce* this section. An action under division (I)(1) of this section shall be brought within two years after the date of the *alleged violation or threatened violation*." (Emphasis added.)

{¶83} The OMA's final usage of "deliberations" occurs in R.C. 121.22(G)(2), which states: "If the minutes of the public body show that *all meetings and deliberations* of the public body have been conducted in compliance with this section, any instrument executed by the public body purporting to convey, lease, or otherwise dispose of any

right, title, or interest in any public property shall be conclusively presumed to have been executed in compliance with this section insofar as title or other interest of any bona fide purchasers, lessees, or transferees of the property is concerned." (Emphasis added.)

{¶84} This provision's use of the terms "meetings" and "deliberations" further demonstrates that they are separate and distinct concepts. *See State ex rel. Ross v. Crawford Cty. Bd. of Elections*, 125 Ohio St.3d 438, 2010-Ohio-2167, ¶23 (the terms "meeting" and "hearing" in the OMA were intended to have altogether different meanings).

{¶85} Furthermore, this court's conclusion in *Holeski* is also based on faulty logic. It is illogical to require one to look backward, i.e., to start the analysis of whether a meeting requires OMA compliance by looking at the end result and whether there was deliberation during the meeting at issue. Following this logic, a public body could easily sidestep the OMA by meeting as a body, discussing a topic or topics with each other and/or with third parties, and then declaring it was not really a "meeting" since, looking at what transpired at the meeting, they did not discuss public business with each other and they did not deliberate. This is classic circular reasoning. It assumes what it intends to prove.

{¶86} In *Holeski*, we held that "deliberations" do not include "information-gathering," "fact-finding," "the gathering of facts and information for ministerial purposes," or "a majority of a board * * * being in the same room and answering questions or making statements to other persons who are not public officials, even if those statements relate to the public business." (Emphasis deleted). *Id.* at 829-30.

{¶87} In support, we cited this court's prior decision in *McIntyre v. Bd. of Cty. Commrs. of Ashtabula Cty.*, 11th Dist. Ashtabula No. 1269, 1986 WL 10021 (Sept. 12, 1986). In *McIntrye*, the plaintiffs alleged that the county commissioners violated the OMA

16

by participating in tours of the Perry Nuclear Power Plant that the Cleveland Electric Illuminating Co. called to acquaint the county commissioners with the operation and progress of the facility. *Id.* at *4. We noted that the commissioners attended the meetings "infrequently, and only as passive observers in a ministerial, fact-gathering capacity." *Id.* There was no evidence introduced to establish that the commissioners "deliberated or conducted either official or public business." *Id.* Plus, a county employee "more often than not, attended these meetings, in place of the commissioners." *Id.* We concluded the plaintiffs had failed to establish a violation of the OMA. *Id.* at *5.

{¶88} Although we referenced the term "deliberations" in *McIntrye* and *Holeski*, we could have also logically held that the public body did not hold a "meeting" under the definition set forth in the OMA. *See, e.g., Wyse v. Rupp*, 6th Dist. Fulton No. F-94-19, 1995 WL 547784, *6 ("if the majority of the members of a public body meet with another only as 'passive observers in a ministerial, fact-gathering capacity,' no official meeting of the public body has occurred").

{¶89} A determination of whether a public body "deliberated" remains relevant when a plaintiff, such as Mr. Bode, seeks to invalidate a public body's resolution, rule, or formal action pursuant to R.C. 121.22(H) as being adopted in an open meeting resulting from "deliberations" that occurred during an improper executive session. *See, e.g., Weisel v. Palmyra Twp. Bd. of Zoning Appeals,* 11th Dist. Portage No. 90-P-2193, 1991 WL 132214 (July 19, 1991); *Greene Cty. Guidance Ctr., Inc. v. Greene-Clinton Community Mental Health Bd.*, 19 Ohio App.3d 1 (2d Dist.1984).

{¶90} A public body deliberates "by thoroughly discussing all of the factors involved [in a decision], carefully weighing the positive factors against the negative

17

factors, cautiously considering the ramifications of its proposed action, and gradually arriving at a proper decision which reflects th[e] legislative process." (Citations omitted.) *State ex rel. Ames v. Portage Cty. Bd. of Commrs.*, 11th Dist. Portage No. 2017-P-0093, 2018-Ohio-2888, ¶22.

### Standard of Review

{¶91} Mr. Bode is challenging the trial court's factual finding that the Board did not engage in deliberations during the March 27, 2017 executive session. The trial court heard live testimony in this matter and is therefore entitled to deference as to its factual findings emanating from that hearing. *See Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). The trial court's factual findings, therefore, will not be disturbed unless they are against the manifest weight of the evidence. *See id.*

{¶92} When considering the manifest weight of the evidence in a civil case, the reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001).

{¶93} "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts." *Id.* at ¶21, quoting *Seasons Coal Co.* at 80, fn. 3. "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent

with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Id.*, citing *Seasons Coal Co.* at 80, fn. 3.

{¶94} Factual determinations are not against the manifest weight of the evidence if supported by some competent, credible evidence going to all the essential elements of the case, *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus, or, with respect to injunctive-relief findings, which require clear and convincing evidence, *Household Fin. Corp. v. Altenberg*, 5 Ohio St.2d 190, 193 (1966).

{¶95} "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." *Seasons Coal Co.* at 81.

### Analysis

{¶96} In this case, the trial court heard the testimony of Trustees Galloway and Malchesky, who both stated that no deliberations occurred during the March 27, 2017 executive session. They further testified that the only discussion relating to Mr. Bode during the executive session was the presentation of information by Chief Sabo regarding Mr. Bode's employment performance, and that they were not aware that Chief Sabo would be informing Mr. Bode that he was being suspended or demoted. While Chief Sabo offered some conflicting testimony the trial court expressly stated that it found the testimony of Trustees Galloway and Malchesky to be credible. Thus, since the trial court determined deliberations did not occur, invalidation of the Board's action on April 5, 2017 was not warranted under R.C. 121.22(H).

19

{¶97} In light of our deferential standard of review, we cannot say the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed.

{¶98} Mr. Bode's second assignment of error is without merit.

### Compliance with R.C. 121.22(G)(1)

{¶99} Mr. Bode's first assignment of error states:

{¶100} "The trial court erred in granting judgment in favor of appellees on appellant's complaint by failing to consider the threshold issue of whether appellees complied with R.C. 121.22(G)(1)."

{¶101} We recently held in *State ex rel. Ames v. Brimfield Twp. Bd. of Trustees*, 11th Dist. Portage No. 2019-P-0017, 2019-Ohio-___, that "the meeting minutes must reflect each of the purposes for which the executive session was held in order to establish that an executive session was properly convened. Otherwise, the purpose and intent of the OMA is circumvented * * *." Here, it is undisputed that the meeting minutes were deficient in identifying the purpose of the executive session with regard to Mr. Bode. No reason for entering executive session was stated; therefore, the Board has failed to comply with R.C. 121.22(G)(1).

{¶102} Mr. Bode's first assignment of error has merit.

{¶103} The violations represented by the Board's deficient meeting minutes are technical in nature. *See Weisbarth v. Geauga Park Dist.*, 11th Dist. Geauga No. 2007-G-2780, 2007-Ohio-6728, ¶27. We therefore remand this matter to the trial court (1) to issue an injunction pursuant to R.C. 121.22(I)(1) to compel the members of the Board to comply with the OMA and (2) to order the Board to pay a civil forfeiture, all court costs,

20

and reasonable attorney's fees, in an amount deemed appropriate, pursuant to R.C. 121.22(I)(2)(a) and *Weisbarth*.

{¶104} The judgment of the Lake County Court of Common Pleas is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

CYNTHIA WESTCOTT RICE, J.,

MATT LYNCH, J.,

concur.