[Cite as *State ex rel. Massie v. Lake Cty. Bd. of Commrs.*, 2021-Ohio-786.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO ex rel. BRIAN MASSIE, | : | **O P I N I O N** |
| Relator-Appellant/ Cross-Appellee, | : | |
| | : | **CASE NO. 2020-L-087** |
| - vs - | : | |
| LAKE COUNTY BOARD OF COMMISSIONERS, | : | |
| Respondent-Appellee, | : | |
| LAKE COUNTY VISITORS BUREAU, INC., | : | |
| | : | |
| Respondent-Appellee/ Cross-Appellant. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 2019 CV 000890.

Judgment: Affirmed.

*Brian Massie,* pro se, 8196 Rainbow Drive, Concord, OH 44077 (Relator-Appellant/Cross-Appellee).

*Charles E. Coulson,* Lake County Prosecutor, and *Michael L. DeLeone,* Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Respondent-Appellee).

*Jeffrey W. Ruple,* Cardenas Ruple & Kurt, LLC, 4770 Beidler Road, Willoughby, OH 44094 (For Respondent-Appellee/Cross-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant/cross-appellee, Brian Massie, appeals from the judgment of the Lake County Court of Common Pleas, awarding summary judgment in favor of appellee, Lake County Board of Commissioners ("Board") and appellee/cross-appellant, Lake County Visitors Bureau, Inc. ("Bureau"), on his complaint for declaratory judgment, injunction, and mandamus. The Bureau has filed a cross-appeal challenging the trial court's judgment declining to strike various exhibits filed by appellant as well as its judgment denying it attorney fees. We affirm.

{¶2} On February 19, 2019, two members of the Board, Commissioner Jerry Cirino and Commissioner John Hamercheck, convened with the Bureau, represented principally by Scott Dockus, the Bureau's Executive Director, to learn about the Bureau's accomplishments during 2018 and set goals for 2019. Also present at the meeting was Lake County Administrator, Jason Boyd. Mr. Dockus provided a Powerpoint presentation to those at the meeting. At some point during the meeting, Mr. Dockus raised an issue regarding distribution of funds held by the Board from a 3% hotel excise tax to which the Bureau was entitled. Both commissioners indicated they would not be entertaining any discussions or deliberations or making any decisions at the meeting regarding the excise tax. Mr. Boyd, however, stated he would be in contact with Mr. Dockus in the following weeks to address the issue towards the end of entering into a Memorandum of Understanding ("MOU").

{¶3} Meanwhile, appellant, a concerned citizen, asserts he with Mr. Dockus and a third party, met in early January 2019 at a restaurant in Concord Township to discuss possible actions that could be taken to secure the release of the excise-tax funds. Appellant contends Mr. Dockus sought his influence and assistance and invited

2

him to the February 19, 2019 meeting. Upon arrival, and before commencement of the meeting, however, appellant was asked to leave by Commissioner Cirino.

{¶4} On May 21, 2019, Mr. Boyd and Mr. Dockus entered into the MOU. The MOU released the excise tax funds and included various uses for the same. One of which was funding the $75,000 salary of the position of Coastal Manager.

{¶5} On June 3, 2019, appellant filed the underlying complaint. The Board subsequently responded by filing a motion to dismiss, pursuant to Civ.R. 12(B)(6) or, in the alternative, a motion for summary judgment. The Bureau later responded by filing an answer as well as a motion for summary judgment. On July 15, 2019, appellant filed a memorandum in opposition to the Board's motions. And the Board subsequently filed a reply to the memorandum.

{¶6} On December 3, 2019, the trial court granted appellant's motion for additional discovery and held the Board's and Bureau's motions in abeyance. Appellant subsequently filed a notice of authority relating to this court's opinion in *Bode v. Concord Twp.*, 11th Dist. Lake No. 2018-L-116, 2019-Ohio-5062.

{¶7} On April 6, 2020, appellant filed a motion for summary judgment and, several days later, the Board filed its amended motion to dismiss or, in the alternative, amended motion for summary judgment. Appellant subsequently filed a motion to strike the Board's amended motion for failure to comply with Civ.R. 15. The Board duly opposed this motion.

{¶8} On April 23, 2020, appellant filed a memorandum in opposition to the Bureau's motion for summary judgment. The Board subsequently filed its memorandum in opposition to appellant's motion for summary judgment. The Bureau also filed a memorandum in opposition as well as a motion to strike portions of appellant's first

3

exhibit and the entirety of various other exhibits. On July 15, 2020, the trial court entered its order denying the outstanding motions to strike; the court also entered summary judgment in the Board's and Bureau's favor, and denied appellant's motion. This appeal follows.

{¶9} Appellant assigns four errors for our review. His first three assigned errors are related and, as such, we shall address them collectively. They provide:

{¶10} "[1.] The trial court erred by granting summary judgment to respondent-appellee Board.

{¶11} "[2.] The trial court erred by granting summary judgment to respondent-appellee Bureau.

{¶12} "[3.] The trial court erred by denying summary judgment to relator-appellant Mr. Massie."

{¶13} Pursuant to Civil Rule 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "the moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor."

{¶14} A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). A de novo review mandates that an appellate court conduct an independent review of evidence before the trial court without deference to the decision under consideration. *Id.*

4

{¶15} Ohio's open meetings act ("OMA"), R.C. 121.22, was designed to require public officials to conduct official business in open meetings. *State ex rel. Long v. Council of the Village of Cardington*, 92 Ohio St.3d 54 (2001). R.C. 121.22(A) states: "This section shall be liberally construed to require public officials to take official action and to conduct all deliberations upon official business only in open meetings unless the subject matter is specifically excepted by law." Further, "[a]ny person may bring an action to enforce [R.C. 121.22,]" and "[a] resolution, rule, or formal action of any kind is invalid unless adopted in an open meeting of the public body." R.C. 121.22(H) and (I)(1).

{¶16} Appellant first argues that the Board failed to establish that Mr. Boyd, acting in his capacity as County Administrator, was authorized to sign the MOU, which transferred excise taxes to the Bureau without a resolution required by R.C. 305.10.

{¶17} Initially, R.C. 305.10 addresses the duty of the Board to maintain a record of proceedings. We fail to see how this section applies to appellant's position.

{¶18} R.C. 305.29 authorizes the Board to appoint a county administrator to serve as the administrative head under the direction and supervision of the Board. R.C. 305.30 sets forth the powers and duties of the county administrator and provides, in part:

{¶19} The county administrator, under the direction of the board of county commissioners, shall do the following:

{¶20} (A) Assist in the administration, enforcement, and execution of the policies and resolutions of the board;

{¶21} * * *

{¶22} The board of county commissioners may assign to such county administrator any office, position, or duties under its control, such

5

office, position, and duties to be performed under the direction and supervision of the board and to be in addition to those set forth in this section.

{¶23} Mr. Boyd filed an affidavit wherein he acknowledged entering the MOU on behalf of the Board. He averred that the Bureau is statutorily entitled to the funds and the Board acts as a "pass through" for distribution of the funds. He also averred he has authority to sign the MOU. Similarly, both Commissioners Cirino and Hammercheck filed affidavits which echoed Mr. Boyd's averments. Additionally, they confirmed that Mr. Boyd had authority to sign the MOU on the Board's behalf.

{¶24} R.C. 5739.09 authorizes a board of county commissioners to, by resolution, "levy an excise tax not to exceed three percent on transactions by which lodging by a hotel is or is to be furnished to transient guests." There is no dispute that the Bureau is entitled one percent of the funds generated from the excise tax. Appellant, however, asserts that the Board failed to introduce evidence that it, by resolution, conferred authority upon Mr. Boyd to sign the MOU. While this may be accurate, and various aspects of a county administrator's authority are triggered by resolution, the failure to introduce such a resolution does not imply Mr. Boyd lacked authority. By signing the MOU on behalf of the Board, he was assisting in the administration and execution of a Board policy; namely, the distribution of excise-tax funds the Board elected to collect pursuant to statute. And Commissioners Cirino and Hammercheck confirmed Mr. Boyd possessed this power. Accordingly, Mr. Boyd, acting pursuant to R.C. 305.30(A), possessed the authority to enter into the MOU on behalf of the Board. Appellant's argument in this respect lacks merit.

{¶25} Next, appellant contends that the trial court erred in its application of *Ames v. Rootstown Township Board of Trustees*, 11th Dist. Portage No. 2019-P-0019, 2019-

6

Ohio-5412. Specifically, appellant asserts that there are genuine issues of material fact regarding whether the February 19, 2019 meeting was a public meeting subject to the Open Meetings Act. He asserts that, in *Ames*, this court noted that "[t]he OMA applies to a meeting or an executive session regardless of whether the public body deliberates." *Id.* at ¶28. He asserts that because two commissioners were present and the issue of the excise tax was raised, the OMA applies and therefore summary judgment was erroneously entered against him.

{¶26} In its judgment, the trial court, citing *Ames*, *supra*, stated the OMA "applies to any 'meeting,' which means (a) any prearranged discussion (b) of the public business of the public body (c) by a majority of its members." *Id.* at ¶23. The trial court also stated: "'[t]he following activities do not constitute a "meeting": (a) information-gathering, fact-finding, or the gathering of facts and information for ministerial purposes, unless there is also a discussion of public business between the members of the public body during the activity; or (b) a majority of a public body being in the same room and answering questions or making statements to other persons who are not public officials, even if those statements relate to the public business.'" Trial court's judgment, ¶16, quoting *Bode v. Concord Twp.*, 11th Dist. Lake No. 2018-L-116, 2019-Ohio-5062, ¶8.

{¶27} Both the Board and Bureau attached various affidavits to their dispositive motions averring that the purpose and content of the February 19, 2019 meeting was completely informational for fact-gathering purposes. Each Board commissioner in attendance averred the meeting was convened for informational purposes so Mr. Dockus, the Bureau's Executive Director, could offer a Powerpoint presentation regarding the Bureau's 2018 accomplishments and outline upcoming projects for 2019. Mr. Boyd and Mr. Dockus made similar averments. And, although each affiant noted

7

that the Bureau did broach the issue of the disbursement of excise tax funds, each commissioner averred he did not engage in any discussion or deliberation regarding the excise tax; instead, Mr. Boyd, in his capacity as county administrator, advised Mr. Dockus he would be in contact with the Bureau at a future date to discuss the distribution of the funds. According to Mr. Boyd, Michael Matas, the Lake County Budget Finance Director, was called to state the current amount of the excise tax funds that were available. Neither the commissioners, Mr. Boyd, nor Mr. Dockus indicate anything further was offered regarding the excise-tax funds or their distribution. Appellant did not offer any Civ.R. 56 evidential material to dispute these averments. Accordingly, we conclude the assemblage of the various individuals on February 19, 2019, was for information-gathering and thus not a "meeting" under the OMA. The trial court did not err in granting the Board summary judgment.

{¶28} Next, appellant asserts that the Bureau failed to establish it was not the functional equivalent of a public body at the time of the February convocation or the May 21, 2019 gathering at which it and Mr. Boyd signed the MOU. Appellant maintains, therefore, there is a genuine issue of material fact whether the OMA's requirements apply.

{¶29} First, as we previously determined, there was no "meeting" on February 19, 2019 for purposes of the OMA. Thus, the Bureau's status is inconsequential in that regard. With this in mind, R.C. 121.22(B)(1) defines a "public body" subject to the Open Meetings Act to include the following:

{¶30} (a) Any board, commission, committee, council, or similar decision-making body of a state agency, institution, or authority, and any legislative authority or board, commission, committee, council, agency, authority, or similar decision-making body of any county,

8

township, municipal corporation, school district, or other political subdivision or local public institution.

{¶31} (b) Any committee or subcommittee of a body described in division (B)(1)(a) of this section.

{¶32} The trial court determined, pursuant to the affidavits of Mr. Dockus and Commissioners Cirino and Hamercheck, that the Bureau is not a public body because it is a nonprofit corporation that is not directed, supervised, or controlled by the Board. Moreover, the trial court cited an Attorney General opinion which specifically determined that nonprofit corporations "recognized by a board of county commissioners as a convention and visitors' bureau and [which] receives public funds from a county hotel and lodging excise tax * * *, but that is not organized and controlled by the county, is not a 'county board' * * *." Ohio Attorney General Opinion No. 99-028. The foregoing conclusion was not drawn in the context of an OMA issue, but whether a nonprofit was entitled to advice and representation of a county prosecutor's office. Still, the conclusion represents persuasive authority militating against appellant's position.

{¶33} Appellant relies upon a decision from the Lucas County Court of Common Pleas, *Toledo Blade Co. v. Economic Opportunity Planning Assn. of Greater Toledo*, 61 Ohio Misc.2d 631 (C.P. 1990).

{¶34} Preliminarily, *Toledo Blade* is a case from a trial court outside of this court's jurisdiction. It therefore has no binding authority on this court. And, in any event, the entity in *Toledo Blade*, Economic Opportunity Planning Association of Greater Toledo ("EOPA") is different from the Bureau. Hence, the facts of that case are distinguishable from the instant matter.

{¶35} In *Toledo Blade*, the trial court concluded that EOPA was a public body by virtue of its designation by the Ohio Department of Development as a community-

9

action agency under R.C. 122.69. The court found that, in its capacity as a community action agency, EOPA receives substantial amounts of public money for the operation of programs for the public welfare and that these programs are subject to the approval of the state governor. EOPA was required to comply with both the program plans and with state statutory provisions or lose its status as a community-action agency.

{¶36} Here, the Bureau is an Ohio non-profit corporation. Pursuant to its Articles of Incorporation, its purpose is to "encourage economic development of the county through the promotion of tourism" and "to encourage through advertising and informational means, and public relations, both within the state and outside it, of travel by persons away from their homes for pleasure, personal reasons, or other purposes." And, according to the commissioners' affidavits, the Board does not operate or control the Bureau; instead, according to Mr. Dockus, the Bureau is governed by its own bylaws.

{¶37} We acknowledge that the Board appoints three of the five members of the Bureau's board of directors; still, there is nothing in the record to suggest the appointees are mere instruments of the Board. Although the Bureau works in concert with the Board, and the Board assists in funding aspects of the Bureau's activities, it is distinct from and cannot be deemed an extension of the Board or akin to a public, county department or committee.

{¶38} Moreover, the Attorney General's Opinion in 99-028 further supports this conclusion. In opining that a visitor's and convention bureau is not a public body, the Attorney General writes:

{¶39} [A] county has no statutory duty to establish, operate, or supervise such an entity as a component of county government. Nor does it appear that in your case the county has taken any discretionary

10

action which could be construed as establishing or supervising the convention and visitors' bureau as an arm of county government. The board of county commissioners has simply "recognized" a non-profit corporation the HCTA as an eligible recipient of revenues under R.C. 5739.024(A) [now R.C. 5739.09].

{¶40} As a non-profit corporation established under R.C. Chapter 1702, the HCTA has a legal identity that is separate and independent from that of the county. * * * The HCTA, by serving as a convention and visitors' bureau, performs a public purpose that the General Assembly deems worthy of public financial support, but the HCTA is not required to do so by law and no statute governs the manner in which this service is to be performed. The county exercises no authority or control over the HCTA, except that which accrues indirectly from the power to grant or withhold funds available [under statute].

{¶41} Here, the Bureau is a non-profit corporation and is not governed by the Board or any other governmental entity. Although the Board distributes funds to the Bureau and appoints three of five members to its board of directors, there is no evidence the Board dictates how the funds will be used or somehow, remotely, through its appointees, controls the Bureau's independent, corporate autonomy. We therefore conclude that the trial court properly concluded, in this context, the Bureau is not a public body and it was entitled to judgment as a matter of law on this point.

{¶42} Furthermore, it is worth pointing out that because the Bureau is not a public body, the signing of the MOU entered by Mr. Dockus and Mr. Boyd in May 2019 was not a "meeting" for OMA purposes. The MOU was entered to distribute funds, pursuant to statute, to assist the Bureau, not the public, in funding its endeavors for 2019. We accordingly hold the trial court did not err in awarding the Bureau summary judgment.

{¶43} Appellant next asserts the trial court erred when it denied his motion for summary judgment. Because we conclude (1) the presentation and discussion which

11

occurred on February 19, 2019 was not a "meeting" under the OMA; (2) Mr. Boyd possessed the authority to enter the MOU on May 21, 2019; and (3) the Bureau is not a public body under the OMA, the Board and the Bureau were entitled to summary judgment. Appellant contends, however, that the trial court failed to consider his assertion that he was improperly precluded from attending the informational meeting. Even though the trial court did not expressly address this point, because the presentation occurring on February 19 was informational, it is not a "meeting" subject to the mandates of the OMA. As such, appellant's exclusion from that gathering cannot be a violation of the OMA. The trial court therefore did not err in denying appellant's motion for summary judgment.

{¶44} Appellant's first, second, and third assignments of error are without merit.

{¶45} Appellant's fourth assignment of error provides:

{¶46} "The trial court erred by denying relator-appellant's motion to strike."

{¶47} After appellant filed his complaint, the Board filed a motion to dismiss, or in the alternative, a motion for summary judgment. Later, the Bureau filed a motion for summary judgment. Approximately two weeks after the Board filed its alternative motions, appellant filed a motion for additional discovery. On December 3, 2019, the trial court granted the motion and held the outstanding motions filed by the Board and the Bureau in abeyance. On December 12, 2019, appellant filed a "Notice of Recent Opinion of the 11th District Court of Appeals," wherein he made the court and the respondents aware of new authority, issued by this court, germane to OMA cases. *See Bode, supra*. On April 6, 2020, the Board filed an amended motion to dismiss or, in the alternative, motion for summary judgment. Appellant subsequently filed a motion to

12

strike because the amended motion was filed without leave of court, in violation of Civ.R. 15.

{¶48} Civ.R. 15(A) provides that, after the time has run for a corresponding responsive pleading, a party may amend its pleading only by leave of court or written consent of the adverse party. Such leave of court, however, shall be freely given when justice requires. A trial court's decision to grant or deny an amended pleading is reviewed under an abuse of discretion standard on appeal. *Farmers Prod. Credit Assn. of Ashland v. Johnson,* 24 Ohio St.3d 69, 73 (1986).

{¶49} In denying appellant's motion to strike, the trial court observed:

{¶50} The relator did not file written consent, and the Board did not move the court for leave to file its amended motion. Therefore, the relator is technically correct; the amended motion was filed out of rule. However, the court notes that Civ.R. 15 also states that the court shall freely give leave for amendments "when justice so requires."

{¶51} Here, the relator argues that he cannot be expected to craft a dispositive motion "from a hodgepodge of documents." But this argument is belied by the fact that he filed just such a motion[, i.e., his motion for summary judgment,] on April 6, 2020, the same day the Board's amended motion was filed. Therefore, the Board's amended motion does not prejudice the relator in any way, and the court finds that relator's motion ought to be denied in the interest of both justice and judicial economy.

{¶52} The trial court's judgment, holding the Board's original dispositive alternative motion in abeyance, allowed for the parties to investigate their positions further and likely obtain additional evidence. Further, appellant's notice of additional authority (which served to overrule previous features of OMA authority in our district), shifted some of the authority upon which the Board relied in its initial motion. In light of these points, we conclude the trial court did not abuse its discretion in denying appellant's motion to strike.

{¶53} Appellant's fourth assignment of error lacks merit.

{¶54} On cross-appeal, the Bureau assigns two errors, they provide:

{¶55} "[1.] The trial court erred by failing to grant LCVB's motion to strike portions of relator's Exhibit 1, and all of Exhibits 8, 10, 11, 13, 14, 15, 16, 17, 19, 20, 21, 22, 24, 25, and 28 attached to relator's motion for summary judgment.

{¶56} "[2.] The trial court erred in failing to award the LCVB its attorney's fees."

{¶57} With respect to the first assigned error on cross-appeal, the trial court determined:

{¶58} Pursuant to Civ.R. 56(E), "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts *as would be admissible as evidence*, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." (Emphasis added.) Furthermore, Civ.R. 56(C) states that "[n]o evidence or stipulation may be considered except as stated in this rule." Proper Rule 56 evidence consists of the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact. The court may not consider any exhibits falling outside of these parameters if, as here, the opposing party objects to them. *Carver v. Deerfield Twp.*, 130 Ohio App.3d 64, 71 (11th Dist.2000).

{¶59} Based on the foregoing, the court finds that the Bureau's objections are well-taken. Parts of Exhibit 1, the affidavit of Faith Andrews, contain[s] statements that are either not based on her personal knowledge or consist of impermissible hearsay. See Evid.R. 801(C). In addition, Exhibits 8, 10,11, 13, 14, 15, 16, 17, 19, 21, 22, 24, 25, and 28 are not properly authenticated pursuant to Civ.R. 56(C). However, for the sake of judicial economy, the court shall not order the affidavit or exhibits struck. Instead, it shall consider only those parts of the affidavit that comply with the Civil Rules, and shall not consider the unauthenticated exhibits.

{¶60} Although the trial court arguably should have stricken the exhibits, it did not consider them and, as a result, we discern no prejudice to the Board. Further, in light of our disposition of appellant's second and third assignments of error, finding the trial court did not err in granting the Bureau's motion for summary judgment and did not

14

err in denying appellant's motion, we deem the Bureau's first assignment of error on cross-appeal moot and is therefore without merit.

{¶61} Regarding the Bureau's second assignment of error, it contends appellant's conduct in initiating the underlying proceedings was frivolous as a matter of law and therefore the trial court erred in failing to grant its motion for attorney fees.

{¶62} R.C. 121.22(I)(2)(b) provides:

{¶63} If the court of common pleas does not issue an injunction pursuant to division (I)(1) of this section and the court determines at that time that the bringing of the action was frivolous conduct, as defined in division (A) of section 2323.51 of the Revised Code, the court shall award to the public body all court costs and reasonable attorney's fees, as determined by the court.

{¶64} Here, the court did not issue injunctive relief, but the court did not find appellant's conduct frivolous, as defined in R.C. 2323.51(A)(2)(a)(iii), which provides:

{¶65} "Frivolous conduct" means * * *:

{¶66} (a) Conduct of [a] * * * party to a civil action * * * that satisfies any of the following:

{¶67} * * *

{¶68} (iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

{¶69} The Bureau asserts there was never a question that it is a non-profit corporation, and not a governmental entity. Moreover, because appellant failed to submit proper Civ.R. 56 evidence, and he is charged with notice of proper procedures, his conduct, in filing his motion for summary judgment was frivolous. We do not agree with the Bureau.

15

{¶70} Even though the Bureau is a private, non-profit, this status does not necessarily negate a conclusion that it could be, under different facts, the functional equivalent to a public body for purposes of the OMA. *See Toledo Blade, supra.* Under the circumstances, appellant's allegation that the Bureau was operating as an extension of the Board was not so far-fetched as to have *no* evidentiary support. After all, the Board does channel operating funds to the Bureau and appoints three of its five directors. And, the trial court duly noted these points:

> {¶71} The relator takes issue with the facts established by the respondents, and raises several claims as to why summary judgment should be denied as to the respondents and granted as to him. In essence, he says that the Bureau is only nominally an independent non-profit corporation. In reality, it is completely controlled by the Board, and is akin to a county department or committee. Therefore both it and the Board are subject to the Open Meeting Act. In support, he says three of the five members of the Bureau's board of directors are named by the Board. In addition, it has no dues-paying members, and the Board provides all of its funding and controls its expenditures. This means it is equivalent to a public body because it performs some public functions for the Board, such as paying the salary of the head of the Lake County Port Authority. And the county administrator could not legally enter the MOU, because he is only authorized to expend up to $50,000 without the Board's approval.

> {¶72} The court finds that these claims may have sufficed to prevent this matter from being decided by summary judgment *if they had been supported with proper Rule 56 evidence*. However, without more than relator's bald allegations, the court finds that the relator has failed to meet his burden of demonstrating that a genuine issue of material fact exists. As such, summary judgment in favor of the respondents is appropriate. (Emphasis added.)

{¶73} The court rightfully emphasized that appellant's allegations had some support; under the circumstances, however, they were not supported by Civ.R. 56 quality evidence as many of the exhibits were unauthenticated and/or included hearsay statements. The failure of appellant to authenticate or obtain proper non-hearsay (or

excepted hearsay) evidence does not imply his allegations lacked evidentiary support entirely. Rather, it means, in this case, appellant's submission of the would-be evidence was out of rule and inherently flawed. We decline, however, to deem this failure sufficient to render his allegations frivolous. We consequently hold the trial court did not err when it concluded appellant's conduct did not constitute frivolous conduct under R.C. 2323.51(A).

{¶74} The Bureau's second assignment of error on cross-appeal lacks merit.

{¶75} For the reasons discussed in this opinion, the judgment of the Lake County Court of Common Pleas is affirmed.


MARY JANE TRAPP, P.J.,

THOMAS R. WRIGHT, J.,

concur.